UNITED STATES COURT OF INTERNATIONAL TRADE

Dwyer Marble & Stone,

　　　　　　　　Plaintiffs,

　　　v.

The United States of America; Office of the United States Trade Representative; Robert E. Lighthizer, U.S. Trade Representative; U.S. Customs and Border Protection; and Mark A. Morgan, U.S. Customs and Border Protection Acting Commissioner,

　　　　　　　　Defendants.

Court No. 20-00334

<u>COMPLAINT</u>

Plaintiffs, Dwyer Marble & Stone, (hereafter "plaintiffs") by and through their attorneys, allege and state the following:

1.　This action concerns Defendants' prosecution of an unprecedented, unbounded, and unlimited trade war impacting over $500 billion in imports from the People's Republic of China. This complaint focuses on Defendants' unlawful escalation of that trade war through the imposition of a third round of tariffs on products covered by so-called "List 3."*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 47,974 (Sept. 21, 2018) and a fourth round of tariffs on products covered by so-called "List 4." *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 43,304 (Aug. 20, 2019)

Complaint  Case 1:20-cv-00334-N/A   Document 2   Filed 09/17/20   Page 2 of 24
September 17, 2020
Page 2

2.      The Trade Act of 1974 ("Trade Act") does not confer authority on Defendants to engage in a vast trade war for however long, and by whatever means, they choose. The Office of the United States Trade Representative ("USTR") conducted an investigation into China's unfair intellectual property policies and practices pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411). Section 304 of the Trade Act (19 U.S.C. § 2414) required USTR to determine what action to take, if any, within 12 months after initiation of that investigation. USTR failed to issue List 3 and List 4 within that window. USTR may not fall back on its "modification" authority under Section 307 of the Trade Act (19 U.S.C. § 2417) to salvage List 3 and List 4. Section 307 of the Trade Act does not permit USTR to expand the imposition of tariffs to other imports from China for reasons untethered to the unfair intellectual property policies and practices it originally investigated under Section 301 of the Trade Act. Yet that is exactly what Defendants did here when they promulgated the List 3 and List 4 duties in response to China's retaliatory duties and other unrelated issues. Even if USTR deems the existing tariffs "no longer appropriate," as it also did here, the Trade Act permits USTR only to delay, taper, or terminate—not ratchet up—the actions it has already taken.

3.      The arbitrary manner in which Defendants implemented the List 3 tariff action also violates the Administrative Procedure Act ("APA"). USTR (1) failed to provide sufficient opportunity for comment, e.g., requiring interested parties to submit affirmative *and* rebuttal comments *on the same day,* (2) failed to consider relevant factors when making its decision, e.g., undertaking no analysis of the supposed "increased burden" imposed on U.S. commerce from the unfair policies and practices that it originally investigated; and (3) failed to connect the record facts to the choices it made. Indeed, despite receiving over 6,000 comments, USTR

said absolutely nothing about how those comments shaped its final promulgation of List 3. USTR's preordained decision-making bears no resemblance to the standards that the APA demands.

4.    The arbitrary manner in which Defendants implemented the List 4 tariff action also violates the Administrative Procedure Act ("APA"). USTR (1) failed to provide sufficient opportunity for comment, only providing for written comments and limited rebuttal comments only to post-hearing comments on testimony provided at the hearing, (2) failed to consider relevant factors when making its decision, e.g., undertaking no analysis of the supposed "increased burden" imposed on U.S. commerce from the unfair policies and practices that it originally investigated; and (3) failed to connect the record facts to the choices it made. Indeed, despite receiving over 2800 comments, USTR said nothing about how those comments shaped its final promulgation of List 4. USTR's preordained decision-making bears no resemblance to the standards that the APA demands.

5.    The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund (with interest) any duties paid by Plaintiffs pursuant to Lists 3 and 4.

<u>JURISDICTION</u>

6.    The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing f o r . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(l)(B)

<u>PARTIES</u>

7.      Plaintiffs are U.S. corporations.  Plaintiffs imported and sold various products subject to enhanced duties under Lists 3 and/or 4A.

8.      Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

9.      The Office of the USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President.  USTR conducted the Section 301 investigation at issue and made numerous decisions regarding Lists 3 and 4.

10.     Ambassador Robert Lighthizer currently holds the position of USTR and serves as the director of the Office of the USTR. In these capacities, he made numerous decisions regarding Lists 3 and 4.

11.     Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects duties on imports. CBP collected payments made by Plaintiffs to account for the tariffs imposed by USTR under Lists 3 and 4.

12.     Defendant Mark A. Morgan is the Acting Commissioner of CBP. In this capacity, he oversees CBP's collection of duties paid by Plaintiffs under Lists 3 and 4.

## STANDING

13.     Plaintiffs have standing to sue because they are "adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. § 702; *see* 28 U.S.C. § 263 l(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning

of Section 702 of title 5."). Tariffs imposed by Defendants pursuant to List 3 and 4 adversely affected and aggrieved plaintiffs because they were required to pay these unlawful duties.

## TIMELINESS OF THE ACTION

14.   A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

15.   The instant action contests action taken by Defendants that resulted in List 3 and 4. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 47,974 (Sept. 21, 2018) and *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 43,304 (Aug. 20, 2019).

16.   Plaintiffs' claims accrued at the earliest on September 21, 2018, when USTR published notice of List 3 in the *Federal Register. Id.* Plaintiffs have therefore timely filed this action.

## RELEVANT LAW

17.   Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices. 19 U.S.C. § 2411(b). If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice. *Id.* § 2411(b), (c)(1)(B).

18.   Section 304 of the Trade Act requires USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation. *Id.* § 2414(a)(1)(B), (2)(B).

19.   Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's

practice has "increased or decreased" or when the action "is no longer appropriate." *Id.* §

2417(a)(1)(B), (C).

## PROCEDURAL HISTORY

### I.   USTR's Investigation

20.     The current U.S.-China trade war grew from a narrow dispute. On August 14, 2017, President

Trump directed Ambassador Lighthizer to consider initiating a targeted investigation

pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and

actions related to intellectual property, innovation, and technology. *Addressing China's*

*Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and*

*Technology,* 82 Fed. Reg. 39,007 (Aug. 17, 2017). According to the President, certain

Chinese "laws, policies, practices, and actions" on intellectual property, innovation, and

technology "may inhibit United States exports, deprive United States citizens of fair

remuneration for their innovations, divert American jobs to workers in China, contribute to

our trade deficit with China, and otherwise undermine American manufacturing, services,

and innovation." *Id.*

21.     On   August   18,   2017,   USTR   formally   initiated   an   investigation   into

"whether acts, policies, and practices of the Government of China related to technology

transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the

Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public*

*Comments: China's Acts, Policies, and Practices Related to Technology Transfer,*

*Intellectual Property, and Innovation,* 82 Fed. Reg. 40,213 (Aug. 24, 2017)

22.     Seven months later, on March 22, 2018, USTR released a report announcing the

results   of   its   investigation.   OFFICE   OF   THE   UNITED   STATES   TRADE

REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), *available at* ttps://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF. USTR found that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id.* at 17. USTR based its findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that favor Chinese recipients, *id.* at 48; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for purposes of large-scale technology transfer, *id.* at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id.* at 171. In its report, USTR did not quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

23.    On the same date, USTR published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/aboutus/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet. USTR also indicated that, consistent with a directive from President Trump, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an

annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id.; see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

II.    **Lists 1 & 2**

24.    Between April and August 2018 (i.e., within the 12-month statutory deadline from the initiation of the investigation in August 2017, *see* 19 U.S.C. § 2414(a)(2)(B)), Defendants undertook a series of actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing duties on imports from China covered by the so called Lists 1 and 2.

25.    On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018). The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id.* at 14,907. USTR explained that it chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-

offices/press-office/press-releases/2018/april/under-section-301-action-ustr

26.    On June 20, 2018, USTR published notice of its final list of products subject to an additional

duty of 25% *ad valorem,* a list commonly known as "List 1." *Notice of Action and Request*

*for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301:*

*China 's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property,*

*and Innovation,* 83 Fed. Reg. 28,710 (June 20, 2018). USTR explained that it had

"narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an

approximate annual trade value of $34 billion." *Id.* at 28,711.

27.    At the same time that it finalized List 1, USTR announced that it intended to impose a 25%

*ad valorem* duty on a second proposed list of Chinese products in order to "maintain the

effectiveness of [the] $50 billion trade action" grounded in its Section 301 investigation. *Id.*

at 28,712. USTR announced a proposed "List 2" covering 284 tariff subheadings with "an

approximate annual trade value of $16 billion." *Id.* at 28,711-12.

28.    On August 16, 2018, USTR published notice of the final list of products subject to an

additional duty of 25% *ad valorem* in List 2, comprising "279 tariff subheadings" whose

"annual trade value . . . remains approximately $16 billion." *Notice of Action Pursuant to*

*Section 301: China's Acts, Policies, and Practices Related to Technology Transfer,*

*Intellectual Property, and Innovation,* 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

**III.      List 3 & List 4**

29.     As soon as USTR announced the results of its investigation in March 2018, tensions

between the governments of China and the United States escalated dramatically. In the

months that followed, Defendants wildly expanded the scope of the tariffs imposed under

Section 301 of the Trade Act to cover imports worth more than $500 billion—ten times the

amount it had deemed "commensurate" with the findings of USTR's original investigation. Defendants did so for reasons untethered to the unfair practices that USTR had investigated, namely China's tit-for-tat countermeasures and a hodgepodge of grievances related to China's role on the world stage.

### A. List 3

30. Shortly after President Trump directed USTR in April 2018 to consider imposing duties on $50 billion in Chinese products, China promptly threatened to impose retaliatory duties on the same value of imports from the United States. In response, President Trump "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation." THE WHITE FIOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), *available at* https://www.whitehouse.gov/briefmgs-statements/statement-president-donald-j-trump-additional-proposed-section-301-remedies/.

31. When USTR finalized List 1 in mid-June 2018, President Trump warned China that he would consider imposing additional tariffs on Chinese goods if China retaliated against the United States. *E.g.,* Vicki Needham & Max Greenwood, *Trump Announces Tariffs on $50 Billion in Chinese Goods,* THE HILL (June 15, 2018), *available at* http://thehill.com/homenews/administration/39242l-trump-announces-tariffs-on-50-billion-in-chinese-goods ("The president said the United States will pursue additional tariffs if China retaliates 'such as imposing new tariffs on United States goods, services or agricultural products; raising non-tariff barriers; or taking punitive actions against American exporters or American companies operating in China.'")

32. Following through on his warning, on June 18, 2018, President Trump formally directed

USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion—despite USTR having not yet implemented List 1 and List 2. President Trump acknowledged that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" motivated his decision. THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/ ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.").

33.    Acknowledging the purpose of the President's directive, USTR stated that it would design the newly proposed duties to address China's threatened retaliatory measures, rather than any of the harms identified in its Section 301 investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President 's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press- releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

34.    Despite these warnings from Defendants, China retaliated by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs under List 1 (July

6, 2018) and List 2 (August 23, 2018).

35.     About a week after China imposed its first round of retaliatory duties, USTR published notice

of its proposal to "modify the action in this investigation by maintaining the original $34

billion action and the proposed $16 billion action, and by taking a further, supplemental

action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from]

China with an annual trade value of approximately $200 billion." *Request for Comments

Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts,

Policies, and Practices Related to Technology Transfer, Intellectual Properly, and

Innovation,* 83 Fed. Reg. 33,608, 33,608 (July 17, 2018). USTR invoked Section

307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action,

subject to the specific direction, if any, of the President with respect to such action, . . . if . .

. such action is being taken under [Section 301(b)] of this title and is no longer appropriate."

*Id.* at 33,609 (citing 19 U.S.C. § 2417(a)(1)(c)). USTR initially set a deadline of August 17,

2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for

rebuttal comments. *Id.* at 33,608.

36.     In its notice, USTR confirmed that it had relied on China's decision to impose "retaliatory

duties" as the primary basis for its proposed action. *Id.* at 33,609 (asserting as justification

"China's response to the $50 billion action announced in the investigation and its refusal to

change its acts, policies, and practices"). USTR explicitly tied the $200 billion in its proposed

action to the level of retaliatory duties imposed by China on U.S. imports, noting that "action

at this level is appropriate in light of the level of China's announced retaliatory action ($50

billion) and the level of Chinese goods imported into the United States ($505 billion in

2017)." *Id.; see also id.* (Because "China's retaliatory action covers a substantial percentage

of U.S. goods exported to China ($130 billion in 2017), the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Although it pointed to China's retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated. *See id.*

37.   USTR's contemporaneous press statements corroborated the contents of its notice: China's retaliatory duties motivated its proposed action. Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), *available at* https://ustr.gov/aboutus/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

38.   That same day, President Trump suggested that the United States' trade imbalance with China supported the decision. @realDonaldTrump, TWITTER (July 10, 2018, 9:17 PM EDT), https://twitter.com/realDonaldTmmp/status/1005982266496094209. Over the following weeks, President Trump also expressed his frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory tariffs and the trade imbalance between the two nations. *See, e.g.,* @realDonaldTrump, Twitter (July 20, 2018, 8:43 AM EDT), https://twitter.com/realDonaldTaimp/status/1020287981020729344; @realDonaldTrump, TWITTER (July 20, 2018, 8:51 AM EDT), https://twitter.com/realDonald Trump/status/1020290163933630464; @realDonaldTrump, TWITTER (July 25, 2018, 7:20 AM EDT), https://twitter.com/realDonaldTrump/status/1022079127799701504;@realDonaldTrump, Twitter (July 25, 2018, 7:01 AM EDT), https://twitter.com/realDonaldTrump/status/1022074252999225344.

39.     Within days of these statements, Ambassador Lighthizer announced that, in light of China's

retaliatory duties, USTR would propose to increase the additional duty from 10% to 25% *ad*

*valorem.* Rather than addressing the practices that USTR investigated pursuant to Section

301 of the Trade Act, he stated that China "[r]egrettably . . . has illegally retaliated against

U.S. workers, farmers, ranchers and businesses." OFFICE OF THE UNITED STATES

TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on*

*Section 301 Action* (Aug. 1, 2018), *available at* https://ustr.gov/about-us/policy-

offices/press-office/press-releases/2018/august/statement-us-trade-representative.

40.     Shortly thereafter, USTR, at the direction of President Trump, formally proposed "raising the

level of the additional duty in the proposed supplemental action from 10 percent to 25

percent." *Extension of Public Comment Period Concerning Proposed Modification of Action*

*Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology*

*Transfer,Intellectual Property, and Innovation,* 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018).

USTR also set new dates for a public hearing over six days ending on August 27, 2018. *See*

*id*.; *see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public*

*Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule),

*available at* https://ustr.gov/about-us/policyoffices/press-office/press-

releases/2018/august/public-hearings-proposed-section-301.

41.     At the same time, USTR adjusted the deadlines for the submission of written comments,

setting September 6, 2018—less than a month later—as the new deadline for both *initial and*

*rebuttal* comments from the public. 83 Fed. Reg. at 38,761. That adjustment, deviating from

its past practices, prevented both USTR and the public from considering initial comments at

the hearing, and left insufficient time for interested parties to review and respond to the initial

comments filed by other parties. USTR also limited each hearing participant to five minutes.

Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001. Despite those obstacles, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments.

42. Just eleven days after receiving final comments from the public, President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018) https://www.whitehouse.gov/briefmgs-statements/statement-from-the-president-4/. Once again. the President made clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 duties) motived his decision, and he immediately promised to proceed with "phase three" of the plan—an *additional $267 billion tariff action*—"if China takes retaliatory action against our farmers or other industries." *Id.*

43. Following the President's announcement, USTR published notice of the final list of products subject to an additional duty, a list commonly known as "List 3." 83 Fed. Reg. at 47,974. USTR imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019. *Id.* USTR determined that the List 3 duties would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id.* USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses. *Id.*

44. As legal support for its action, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are

the subject of such action has increased or decreased." *Id.* (brackets omitted). USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.* USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id.* at 47,975.

45.     In the months that followed, China and the United States attempted to resolve their differences through trade negotiations. Based on the progress made with China in those negotiations, the Trump Administration announced in December 2018, and again in February 2019, that it would delay the scheduled increase in the List 3 duty rate from 10 to 25%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China\s Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 7,966 (Mar. 5, 2019).

46.     The trade negotiations ultimately fell apart. In May 2019, USTR announced its intent to raise the tariff rate on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the day of export. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation,* 84 Fed. Reg. 20,459 (May 9, 2019) *("List 3 Rate Increase Notice"), see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 21,892 (May 15, 2019). The notice cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate. *List 3 Rate Increase Notice,* 84 Fed. Reg. at 20,459. Unlike with past imposition of new tariffs, USTR did not seek public comment but rather simply announced that the increase would occur. *Id.*

47.    Recognizing that List 3 would cause substantial harm to U.S. companies and consumers, as well as the U.S. economy, USTR in June 2019 invited the public to seek exclusions from List 3 duties on a product-specific basis. *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 29,576 (June 24, 2019).

48.    The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint, with the exception of the limited number of products for which USTR extended its originally granted exclusions from the List 3 duties. *See, e.g., Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 48,600 (Aug. 11, 2020).

**B.  List 4**

49.    On May 17, 2019, a mere eight days after it published notice of its decision to increase the duty rate on imports covered by List 3, USTR announced its intent to proceed with yet another list—List *4 – c*overing even more products subject to additional duties. Under

USTR's proposal, List 4 would impose an additional duty of 25% *ad valorem* on products worth $300 billion. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 22,564, 22,564 (May 17, 2019). USTR explained that its decision was motivated by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce." *Id.*

50.    Similar to the process it followed for List 3, USTR invited the public to comment on proposed List 4 and participate in a hearing. *Id.* The public submitted nearly 3,000 comments. Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001. Despite the opportunity to comment, the timeline for participation in the hearing left little room for meaningful input: USTR required witnesses to submit drafts of their testimony by June 10, 2019, some seven days before the deadline for fully developed written comments, and then it again limited witnesses to five minutes of testimony at the hearing. *Id*

51.    On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, President Trump announced that the List 4 tariffs would become effective September 1, 2019 at a rate of 10% *ad valorem.* @realDonaldTrump, TWITTER (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/real DonaldTrump/status/1156979446877962243 (noting a "small additional Tariff of 10% on the remaining 300 Billion Dollars of goods and products coming from China into our Country").

52.    On August 20, 2019, USTR issued a final notice adopting List 4 in two tranches. *Notice of*

*Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 43,304 (Aug. 20, 2019). List 4A would impose a 10% *ad valorem* duty on goods worth roughly $120 billion, effective September 1, 2019. *Id.* at 43,304. List 4B would impose a 10% *ad valorem* duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. *Id.* at 43,305. Once again, USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than to claim that its determination "takes account of the public comments and the testimony." *Id.*

53.     As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that it may modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." *Id.* at 43,304. But instead of finding any increased burden on U.S. commerce from the practices that were the subject of USTR's investigation, USTR merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id.*

54.     Just ten days later, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 45,821 (Aug. 30,

2019). USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id.* at 45,822. USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action. *Id.*

55. On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019). USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, *id.,* an action that ultimately became effective on February 14, 2020, when USTR halved the applicable duty rate, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 3,741 (Jan. 22, 2020).

56. In the months that followed, the United States and China implemented the limited trade deal that they negotiated near the end of 2019. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2019/december/united-statesand-china-reach. During that time, Defendants declined to impose additional duties on imports covered by List 4B, presumably because China had agreed to some new, unrelated obligations under the limited trade deal.

57. The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint. Although the proposed duties on products covered by List 4B remain

suspended, President Trump has continued to threaten to impose them if China does not

meet its obligations under their limited trade deal. *See, e.g.,* @realDonaldTrump,

TWITTER (June 22, 2020, 10:22 PM EDT),

https://twitter.com/realDonaldTrump/status/1275252814206447618 ("The China Trade

Deal is fully intact. Hopefully they will continue to live up to the terms of the Agreement!").

## STATEMENT OF CLAIMS

## COUNT ONE

## (DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)

58.     Paragraphs 1 through 57 are incorporated by reference.

59.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights

        and other legal relations of any interested party seeking such declaration, whether or not

        further relief is or could be sought." 28 U.S.C. § 2201(a).

60.     The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in

        the Lists 3 and 4 tariffs.

61.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that

        "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens

        or restricts United States commerce, and action by the United States is appropriate." 19

        U.S.C. § 2411(b). USTR failed to predicate its actions giving rise to Lists 3 and 4 on any

        such determination.

62.     If USTR concludes upon investigation that a foreign country maintains an unfair trade

        practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to

        take within "12 months after the date on which the investigation is initiated." 19 U.S.C. §

        2414(a)(1)(B), (2)(B). USTR's action giving rise to List 3 occurred in September 2018, and

USTR's action giving rise to List 4 occurred in August 2019, both of which are over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

63. Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B). Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act. Congress did not authorize USTR to escalate its focused investigatory findings into an open-ended trade war.

64. Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to *increase* tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

65. Plaintiffs are therefore entitled to a declaratory judgment that Defendants' actions giving rise to Lists 3 and 4 are *ultra vires* and contrary to law.

## COUNT TWO

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

66. Paragraphs 1 through 57 are incorporated by reference.

67. The APA authorizes the Court to hold unlawful and set aside agency action that is:"(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of

procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

68.     Defendants exceeded their authority under the Trade Act in promulgating Lists 3 and 4 and

therefore acted "not in accordance with the law" and "in excess of statutory authority" for

the reasons set forth in Count One.

69.     Defendants failed to offer any evidence for any asserted "increased burden" from China's

intellectual property policies and practices that were the subject of USTR's Section 301

investigation.

70.     Defendants also promulgated Lists 3 and 4 in an arbitrary and capricious manner because

defendants did not provide a sufficient opportunity for comment, failed to meaningfully

consider relevant factors when making their decisions, and failed to adequately explain their

rationale. Defendants' preordained decision-making resulted in the unlawful imposition of

tariffs on imports covered by List 3 whose value equals $200 billion.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court

1) declare that Defendants' actions resulting in tariffs on products covered by List 3 are
   unauthorized by, and contrary to, the Trade Act;

2) declare that Defendants arbitrarily and unlawfully promulgated List 3 in violation of the
   APA;

3)  vacate the List 3 rulemaking;

4) order Defendants to refund, with interest, any duties paid by Plaintiffs pursuant to List 3;

5) permanently enjoin Defendants from applying List 3 against Plaintiffs and
   collecting any duties from Plaintiffs pursuant to List 3;

6) declare that Defendants' actions resulting in tariffs on products covered by List 4 are

unauthorized by, and contrary to, the Trade Act;

7) declare that Defendants arbitrarily and unlawfully promulgated List 4 in violation of the APA;

8) vacate the List 4 rulemaking;

9) order Defendants to refund, with interest, any duties paid by Plaintiffs pursuant to List 4;

10) permanently enjoin Defendants from applying List 4 against Plaintiffs and collecting any duties from Plaintiffs pursuant to List 4;

11) award Plaintiffs their costs and reasonable attorney fees; and grant such other and further relief as may be just and proper.

Respectfully submitted,

 /s/ David J. Craven
David J. Craven
Craven Trade Law LLC
3744 N Ashland Avenue
Chicago, IL 60613

David.Craven@TradeLaw.com
(773) 709-8506

Counsel for Dwyer Marble & Stone

By:     /s/David J. Craven
            David J. Craven

Dated: September 17, 2020